734 P.2d 259

Dolores H. MATTOX,
Petitioner-Appellee,
Cross-Appellant,

v.

Donald M. MATTOX,
Respondent-Appellant,
Cross-Appellee.

No. 8319.

Court of Appeals of New Mexico.

Feb. 10, 1987.

**480**

Elizabeth Gabriel, Albuquerque, for respondent-appellant cross-appellee.

Sandra Morgan Little, Atkinson & Kelsey, P.A., Albuquerque, for petitioner-appellee cross-appellant.

## OPINION

BIVINS, Judge.

Respondent-appellant (husband) and petitioner-appellee (wife) appeal the decision of the trial court in this divorce proceeding. Husband raises five issues: (1) whether the trial court properly valued his pension plan; (2) whether the trial court properly valued his employee stock option plan; (3) whether the trial court properly valued his employee savings plan; (4) whether the trial court erred in the award of a coin collection as husband's separate property when its value was already included in the award of household goods; and (5) whether the trial court abused its discretion in awarding lump sum alimony in addition to alimony of $500 a month for one year. We affirm on issues 1 and 2 and remand as to issue 3 with instructions. As to issue 4, we grant the parties' request to correct the arithmetic error on the personal property list. We discuss issue 5 in conjunction with wife's cross-appeal since the parties appeal the common issue of alimony.

Wife raises two issues on cross-appeal: (1) whether the trial court erred in awarding alimony for one year only; and (2) whether the trial court erred in not awarding wife attorney fees at trial. We affirm on both issues.

The parties married on September 6, 1953. Husband, aged fifty-two at the time of appeal, has worked at Sandia National Laboratories since 1961 and currently earns approximately $68,500 per year. Wife taught school sporadically during the marriage, but remained at home during most of the marriage. The parties have one married daughter. Since separating in September 1983, wife, aged fifty-two at the time of appeal, has become recertified to teach elementary school in New Mexico. Starting salary for teachers is approximately $13,000 for a nine-month period.

On May 31, 1984, the trial court heard issues regarding the property settlement, valuation of property and alimony. On December 27, 1984, the trial court issued its findings of fact, distributing $203,820 of community assets to wife and $187,459 of community assets to husband. The trial court awarded temporary alimony of $500 per month to wife for one year plus the difference in the value of the property award as lump sum alimony. Although the trial court found economic disparity between the parties, it ordered each party to pay his or her own attorney fees. The trial court entered its judgment and final decree of dissolution of marriage on December 27, 1984. We address husband's issues first.

## PENSION

Husband contends that the trial court erred in valuing his vested, but unmatured, pension plan. Specific errors alleged include: a) the valuation date; b) the retirement date; c) the discount rate; d) the non-withdrawal of contributions option; and e) failure to consider tax consequences. We address each point separately.

### a) Valuation Date

■ The community's interest in a pension plan that is vested but unmatured is the amount of benefits earned during coverture. *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978). "The significance of *Copeland* * * * is that the Court was willing to divide the husband's future retirement benefits at the time of the divorce even though the right to receive them had not yet actually [matured] completely." *Hughes v. Hughes*, 96 N.M. 719, 723, 634 P.2d 1271, 1275 (1981). To value unmatured pension benefits, the trial court must determine their present value. *Ridgway v. Ridgway*, 94 N.M. 345, 610 P.2d 749 (1980). Present value is " 'the amount which must be invested at present to produce a required number of annual payments of a given amount, or a required future total investment, including retained interest, at a stated rate of interest over a specified number of years.' " *Id.* at 346–47 n. 1, 610 P.2d at 750–51 n. 1 (quoting D. Clark & B. Gottfried, University Dictionary of Business & Finance (1967)). "Whether or not the pension is matured, the first step is to determine its future value, expressed as a lump sum. Discount factors are then employed to calculate the present cash value of this sum." *In re Marriage of Pilant*, 42 Wash.App. 173, 179, 709 P.2d 1241, 1245 (1985).

New Mexico cases state clearly that a spouse is entitled to a community share of the portion of retirement that is vested but unmatured at the date of divorce. *Copeland; Madrid v. Madrid*, 101 N.M. 504, 684 P.2d 1169 (Ct.App.1984). *Accord Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980), *overruled on other grounds, Ellsworth v. Ellsworth*, 97 N.M. 133, 637 P.2d 564 (1981). In *Madrid*, however, husband was already receiving pension benefits; only the status of post-divorce increases was in question. In our case, neither the parties nor the trial court considered further payment by husband after the divorce.

Husband's pension plan is a defined benefit plan.

> In a defined benefit plan[,] "the company obligates itself to pay a specified monthly pension at retirement * * *. The employee's present interest * * * is derived from the amount of monthly pension promised at retirement. * * * [We value this] interest * * * by first determining the value of the pension measured at the future retirement date, and then discounting that value back to the present date of valuation * * *."

*In re Marriage of Stephenson*, 162 Cal. App.3d 1057, 1082–83, 209 Cal.Rptr. 383, 400 (1985) (quoting Projector, *Valuation of Retirement Benefits in Marriage Dissolutions*, 50 L.A.Bar Bull. 229, 231 (1975)).

The valuation date used in our case was the date of trial. The experts considered only husband's monetary contributions during the marriage. The only uncertainty was whether husband would live twenty-two months until April 1986, the maturity date of the plan. Discounting to present value accounts for the possibility that the pension will not mature. The record indicates that wife's expert valued husband's future right to receive the pension as of the

trial date and discounted the pension to present value. This was a proper method. *See Stephenson.*

We are concerned only with valuing the pension for purposes of dividing the community property, not with apportioning deferred benefits to the parties on a "pay as it comes in" basis. In our case, the trial court found that the present value of husband's pension was $101,239. Neither the findings nor the judgment mentions a valuation date used in reaching this figure. Husband contends that a letter opinion issued by the trial judge on September 13, 1984, uses April 1984, rather than April 1986, as a valuation date. While the letters, remarks, or opinion of a trial judge may be looked to in clarifying ambiguities or inconsistencies in the findings, the formal findings must prevail. *Sanders v. Carmichael Enterprises,* 57 N.M. 554, 260 P.2d 916 (1953). Here, since the trial court's findings were silent on the valuation date used, the findings contain no ambiguities or inconsistencies,[1] and so prevail over the letter of the trial court.

The trial court's findings, of course, must be supported by substantial evidence. *Berry v. Meadows,* 103 N.M. 761, 713 P.2d 1017 (Ct.App.1986). The trial court used wife's expert's figure of the present value in reaching a value. Both experts testified that their calculations did not take into account husband's earnings between the date of trial, May 31, 1984, and the maturity date of the pension, April 1986. The trial court's valuation falls within the range of figures offered through expert testimony. *See In re Marriage of Bergman,* 168 Cal.App.3d 742, 214 Cal.Rptr. 661 (1985). The substantial evidence requirement is met.

Husband contends that the trial court should have valued the pension as if husband quit working on June 1, 1984, an approach that would invoke early retirement penalties. We disagree. First, no evidence supports this assumption because husband testified that he would continue to

work at Sandia. *See In re Marriage of Bayer,* 687 P.2d 537 (Colo.App.1984). Second, although husband received all of the pension, he wants to value it at the lower figure as if early retirement penalties had been imposed. This would severely penalize the nonemployee spouse. If wife had received one-half of the pension on a "pay as it comes in" basis, the pension would have been valued at the higher figure. Third, husband states several times in his brief-in-chief that even though the experts' calculations assume that husband will not earn any more money, the community is not entitled to use future employment years in valuing the pension. Husband cites no authority for this proposition. We assume no authority was found. *In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). Finally, such an approach would come dangerously close to defeating the community interest of the nonemployee spouse. *See generally In re Marriage of Gillmore,* 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981). Failing to use future employment years in valuing the pension would not effect an equal division of community property mandated by New Mexico case law. *Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981).

■ The fact that a spouse cannot receive any benefits until a certain age does not affect the character of the pension rights which are unmatured but vested. *In re Marriage of Bruegl,* 47 Cal.App.3d 201, 120 Cal.Rptr. 597 (1975), *overruled on other grounds, In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). Husband has a vested right to his defined benefit pension plan. He is irrevocably entitled to collect benefits. *Copeland.* When the pension plan matures, husband is eligible to retire and is entitled to receive the benefits which he has earned through the years. *Id.* The maturity date is a certain time, a constant date when husband can collect benefits without penalty. The experts testified regarding the actuarial present value of the pension bene-

---

1. Trial court's finding No. 17 states that husband can retire in March 1985 with full retirement. This is incorrect and should have been April 1986. However, since neither of these dates was used as the valuation date, we find the error requires no reversal.

fit husband would be entitled to receive upon working twenty-five years in April 1986, taking into account monetary contributions and current pension entitlement accrued during coverture and based on husband's current salary. This was correct. *Bergman.*

It appears that husband confuses the two issues of valuation and contribution. Wife's expert only assumed that husband would continue working until April 1986, thereby having a fully matured pension; the expert did not include husband's monetary contributions or salary increases received after the divorce in valuing the pension. If husband were to seek pension benefits before his twenty-five years of service accrued, he would receive reduced pension benefits, resulting in a lower present value of the pension. In April 1986, husband's vested pension will have fully matured and he can collect benefits without penalty. Community effort contributed 92% to this pension. While rights to benefits under a retirement plan may never vest or mature due to contingencies and unforeseeable occurrences, the non-employee spouse, nevertheless, is entitled to have the community portion of the contingent interest computed and divided. *Berry.* We will not undervalue the pension based on an unsupported assumption. A nonemployee spouse's interest in future benefits, based on contributions made by the community during coverture, does not relate to when the right to the benefits vests or matures. *See Hughes; Copeland.*

If the trial court had divided the pension on a "pay as it comes in" basis, wife's share would have been one-half of twenty-three/twenty-five (total years of coverture divided by total years worked) at the date of maturity (when the pension "comes in"), i.e., the full value of the community portion at maturity. *Copeland.* The additional value of husband's monetary contributions to the pension from the end of coverture to the maturity date would be his separate property. *See Madrid.* We do not believe that valuing the pension at the time of

divorce necessarily means valuing the pension as if it were cashed in precisely at that moment and subject to attendant penalties. Such an approach would rival the "potentially whimsical result" rejected in *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976) (en banc) (where twenty-four years of community effort contributed to pension, it would be inequitable to consider pension separate property, even though it was unvested).

**b) Retirement Age**

■ At the same time that husband urges this court to value the pension plan as of June 1, 1984, husband also contends that the trial court should have used age sixty-five as his retirement age in valuing the pension. Based on the testimony of wife's expert, the trial court valued the pension considering only husband's monetary contributions to date, but took into account that the pension matured in April 1986. A pension plan matures when the employee is entitled to receive the benefits earned through the years and is eligible to retire. *Copeland.* Unlike a retirement date, the maturity date is not speculative and can be easily identified from the pension plan. *See* 3 W. Troyan, E. Poll, W. Cantwell & W. Weston, *Valuation & Distribution of Marital Property,* § 46.18[2] (1986). Wife's expert testified that the normal retirement date for the Sandia Plan is when the employee works twenty-five years and attains at least age fifty. Husband will have worked twenty-five years and be fifty-three years old in April 1986.[2] This date was used by wife's expert and implicitly taken into account by the trial judge. We find no error in doing so.

■ Indeed, a spouse should not unilaterally choose to postpone retirement when pension rights have fully vested and matured so as to impair a non-employee spouse's interest in those retirement benefits. *Gillmore.* We recognize that employee spouses can sharply reduce the

---

**2.** We note that this discussion of whether husband continued to work and whether the pension matured in April 1986 is moot since April 1986 has now passed. Nevertheless, wife's expert properly used April 1986 as the maturity date of the pension.

present value of pension benefits by projecting a retirement date as distant as possible. We do not condone this approach and instead adopt the approach in *Gillmore:* A spouse "cannot time * * * retirement to deprive [a nonemployee spouse] of an equal share of the community's interest in [the] pension. It is a 'settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse.'" *Id.,* 29 Cal.3d at 423, 174 Cal.Rptr. at 496, 629 P.2d at 4 (citations omitted).

### c) Discount Rate

■ "The calculation of a present value requires discounting for mortality, based upon group annuity mortality tables, discounting for interest, and discounting for the probability that the employee will remain with the company to retirement age." Hardie, *Pay now or later: Alternatives in the disposition of retirement benefits on divorce,* 53 Cal.St.B.J. 106, 108 (1978). *See also* Projector, *Valuation of Retirement Benefits in Marriage Dissolutions,* 50 L.A.Bar Bull. 229 (1975); Troyan, *Pension Evaluation & Equitable Distribution,* 10 Fam.L.Rep. (BNA) 3001 (Nov. 22, 1983); DiFranza & Parkyn, *Dividing pensions on marital dissolution,* 55 Cal.St.B.J. 464 (1980); *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981) (en banc). Discounting is an important and complex factor in valuing pension plans. The above-cited articles provide useful discussions of discounting factors.

Husband contends that the trial court erred in averaging the two discount rates presented by the experts. One expert used 9%; the other expert used 13.6%. The findings do not state the discount rate used by the trial court in valuing the pension. Again, husband relies on the trial court's letter opinion of September 13, 1984. As noted above, this letter opinion does not control. Nevertheless, even assuming that the trial court did average the two rates, the rate is supported by substantial evidence, the standard of review applicable to this case. *Lucas v. Lucas,* 95 N.M. 283, 621 P.2d 500 (1980); *Berry.* Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Lucas.* Here, the trial court's valuation of the pension was within the range of figures offered by both expert witnesses. This was sufficient. *See Bergman.*

### d) Non-withdrawal Option

Husband asks this court to compute the value of the pension plan using the fact that husband does not intend to withdraw any contributions from the plan. As we understand the record, the trial court *did* compute the pension using the non-withdrawal alternative. Therefore, we do not address this argument.

### e) Tax Consequences

■ Husband also argues that the trial court erred in failing to consider the tax consequences of the pension. We disagree. Courts in several other jurisdictions have decided that the tax consequences of deferred pension payments are too speculative. *Johnson; In re Marriage of Marx,* 97 Cal.App.3d 552, 159 Cal.Rptr. 215 (1979); *In re Marriage of Helland,* 354 N.W.2d 591 (Minn.App.1984); *In re Marriage of Gilbert,* 628 P.2d 1088 (Mont.1981); *Carpenter v. Carpenter,* 657 P.2d 646 (Okla. 1983); *In re Marriage of Clapperton,* 58 Or.App. 577, 649 P.2d 620 (1982). Because tax rates change and the employee's tax bracket will probably change after retirement, courts have held that future tax consequences are too speculative and should be disregarded in calculating the present value of pensions. We find this reasoning persuasive and decline to consider the speculative future effects of taxes on the pension value. The trial court did not err in not considering the tax consequences of the pension. We uphold the pension valuation of $101,239.[3]

3. New Mexico's Supreme Court recently held that the trial court must now divide community property retirement benefits on a "pay as it comes in" basis. *Schweitzer v. Burch,* 103 N.M. 612, 711 P.2d 889 (1985). This decision is prospective only and does not apply in the instant case, but we note that unless both parties agree otherwise, the "pay as it comes in" method is

**EMPLOYEE STOCK OPTION PLAN (ESOP)**

Under Sandia's Employee Stock Option Plan (ESOP), Sandia buys shares of stock for its employees. The trial court valued the ESOP at $3,150 and awarded that asset to husband. Husband contends that the trial court erred in this valuation because it failed to consider the tax consequences of the ESOP. Husband contends that 40% of the value of the ESOP would be taken by the Internal Revenue Service in taxes.

■ The general rule is that the trial court should consider tax consequences when deciding a property settlement upon dissolution of marriage. *Cunningham v. Cunningham*, 96 N.M. 529, 632 P.2d 1167 (1981). These tax consequences should be immediate and specific. *In re Marriage of Clark*, 80 Cal.App.3d 417, 145 Cal.Rptr. 602 (1978). Normally, the trial court should consider the different bases that property might have, and the resulting effects on capital gains taxes, when dividing property such as houses or stock. *See generally* Annot., 51 A.L.R.3d 461 (1973); Lepow, *Proposals to Reform the Tax Treatment of Property Division Incident to Divorce—A Splitting Headache*, 10 Com. Prop.J. 237 (1983). We note, however, that the actual, equal division of community property at divorce is not a taxable event for purposes of federal income taxes. *See Carrieres v. Commissioner of Internal Revenue*, 64 T.C. 959 (1975), *aff'd*, 552 F.2d 1350 (9th Cir.1977).[4]

■ In our case, too much is unknown: whether husband will sell the stock, the price of the shares upon sale, the tax laws in effect at the time of the sale,[5] husband's tax rate at the time of the sale. Requiring the trial court to consider tax consequences in light of numerous unknown factors would be unreasonable. The evidence indicates that husband has no immediate plans

to sell the stock, nor is he able to do so under the provisions of ESOP. If husband had been able to sell the stock immediately, we might have reached a different result. Where tax consequences are too speculative, it is proper for the trial court to disregard them. *See In re Marriage of Sharp*, 143 Cal.App.3d 714, 192 Cal.Rptr. 97 (1983). The trial court did not err in valuing the ESOP. Even if the trial court had erred in valuing the ESOP, we note that the effect on the total distribution of community property would amount to less than one-half of 1%. As we have often stated, mathematical exactitude in the division of property is not required. *Bustos v. Bustos*, 100 N.M. 556, 673 P.2d 1289 (1983); *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976) (*Michelson II*).

In so holding, we do not reach the issue of whether the trial court should have considered capital gains taxes on the three houses distributed in the property division. Although this would be a relevant consideration, neither party raised this issue, and we will not address it on appeal.

**BELL SYSTEM SAVINGS PLAN (BSSP)**

■ The trial court valued husband's BSSP at $36,550 and awarded the plan to wife. Husband contends that tax consequences, forfeitures, and penalties would render the BSSP through Sandia worth approximately $27,000, not $36,550. Husband's argument takes into account substantial penalties and forfeitures if he were to withdraw the proceeds in the BSSP. Husband contends that this lower figure should have been used in valuing the plan for distribution.

In awarding the BSSP to wife, the trial court did not indicate whether husband should liquidate the plan immediately and suffer consequent forfeitures or penalties; pay wife in installments as amounts be-

now mandatory. Thus, unlike our case where the employee spouse receives the entire pension, offset by an award of property to the non-employee spouse, the risks and uncertainties of future benefits are shared equally by the parties.

4. The Tax Reform Act of 1984, I.R.C. §§ 71, 1041 (1985), became effective after December 31, 1984, four days after the entry of final de-

cree in this case. The holding of *Carrieres* is not affected by this Act.

5. We are well aware that tax rates and tax laws are subject to significant change in view of the recent Tax Reform Act of 1986, Pub.L. 99–514, 100 Stat. 2085 (1986).

come withdrawable; take out a loan for $36,550 and reserve the BSSP for himself; or effect some other alternative. We will not speculate as to any of the methods raised. We remand to the trial court to clarify how to distribute the BSSP or equivalent amount. In doing so, the trial court should consider what, if any, immediate and specific tax consequences husband will incur under the alternative the court chooses. *Cunningham; see generally In re Marriage of Hayne,* 334 N.W.2d 347 (Iowa App.1983); *In re Marriage of Kathrens,* 47 Or.App. 823, 615 P.2d 1079 (1980).

## COIN COLLECTION

The parties state that they erroneously included the value of a coin collection twice in calculating the division of personal property. We agree. Pursuant to NMSA 1978, Civ.P.Rule 60(a) (Repl.Pamp.1980), we grant the parties' request to decrease husband's award of personal property by $1,450 and decrease wife's award of personal property by $20.

## ALIMONY

The trial court awarded wife temporary alimony of $500 per month for one year. The trial court also awarded a portion of the community property as lump sum alimony. Husband appeals the award of alimony as excessive; wife cross-appeals the award of alimony as insufficient.

An award of alimony is based on need. *Weaver v. Weaver,* 100 N.M. 165, 667 P.2d 970 (1983); *Brister v. Brister,* 92 N.M. 711, 594 P.2d 1167 (1979). Factors to consider in determining whether to award alimony include the party's needs, age, health, means of support, the earning capacity and future earnings of the parties, the duration of the marriage and the amount of property owned by the parties. *Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974) (*Michelson I*). The decision to grant or deny alimony lies within the sound discretion of the trial court, and we will alter it only upon a showing of an abuse of discretion. *Ellsworth; Hurley.* In determining whether an award or denial of alimony is an abuse of discretion, we consider whether the denial was contrary to all reason. *Michelson I.*

In examining the factors listed above, the trial court found that wife was fifty-two years old, able-bodied and in good health. The trial court found wife able to teach school, earning approximately $13,-000 per year. The trial court found that husband earned approximately $68,500 per year and planned to continue working. Although the trial court found economic disparity between the parties, it also found that wife's need for alimony was limited due to the substantial value of the community assets she was to receive. Wife contends that given the severe economic disparity between the parties, the trial court should have awarded more alimony for a longer time. While we might have awarded a different amount of alimony, we cannot say that the trial court's award was an abuse of discretion.

Husband argues that the award of lump sum alimony was an abuse of discretion. Husband contends that if wife were to liquidate the majority of the community property and invest the proceeds at an interest rate of 13% she would earn $22,000 per year, in addition to her teaching salary of $13,000. This argument has no basis in law. A spouse is not required to convert the majority of the community property into income-producing property. While income produced by property may normally be considered in setting alimony, proceeds from selling the property itself should not be considered except in such rare cases where fairness requires. *Ellsworth.* Further, interest rates fluctuate; wife will not always be guaranteed a 13% return on her investment. The award of lump sum alimony was not an abuse of discretion.

Both parties erred in computing the amount of lump sum alimony. In dividing the property, the judge awarded $203,820 of community assets to the wife and $187,-459 of community assets to the husband. The trial court awarded "the difference in the value of the property as lump sum alimony." The parties characterize this difference as $16,631. They are incorrect. The total value of community assets was $391,279. Had this amount been equally divided, each party would have been enti-

tled to $195,639.50. Instead, wife received $203,820, an amount that exceeds her one-half share by $8,180.50, not $16,631.

## ATTORNEY FEES

 In determining whether attorney fees should have been awarded to either party, we apply the standard set out in *Berry*. Factors to consider in awarding or denying attorney fees include economic disparity between the parties. *Allen v. Allen*, 98 N.M. 652, 651 P.2d 1296 (1982). If there is economic disparity between the parties such that one party may be inhibited from preparing or presenting a claim, then the trial and appellate courts should be liberal in exercising discretion. *Id.* However, in *Fitzgerald v. Fitzgerald*, 70 N.M. 11, 369 P.2d 398 (1962), the trial court did not err in denying attorney fees in view of the value of property awarded to wife and alimony granted. Our standard of review for the award or denial of attorney fees is whether the trial court abused its discretion. *Berry*. Applying this standard to our case, we cannot say that the trial court abused its discretion in denying attorney fees to wife. *See Fitzsimmons v. Fitzsimmons*, 104 N.M. 420, 722 P.2d 671 (Ct.App. 1986).

Wife also seeks attorney fees of $4,015.43 for this appeal. Because of the economic disparity between the parties, the relative success of wife's appeal, and the limited liquid resources available to her, we award $2,500 to wife as attorney fees on appeal. *See Allen; Fitzsimmons; Blake v. Blake*, 102 N.M. 354, 695 P.2d 838 (Ct. App.1985). Husband is to pay his own attorney fees for this appeal. Each party shall pay his or her own costs.

IT IS SO ORDERED.

DONNELLY, C.J., and GARCIA, J., concur.