739 P.2d 974

Mildred Jordan LEWIS,
Petitioner-Appellee, and
Cross-Appellant,

v.

Clayton LEWIS, Respondent-Appellant,
and Cross-Appellee.

No. 8466.

Court of Appeals of New Mexico.

May 21, 1987.

Paul D. Gerber, Gerber, Gramer & Ahern, Santa Fe, for petitioner-appellee and cross-appellant.

Michael J. Golden, Moore & Golden, P.A., Santa Fe, for respondent-appellant and cross-appellee.

## OPINION

SUSAN M. CONWAY, District Judge.

The parties in this case were divorced in a bifurcated decree May 18, 1983, after 38 years of marriage. Property division, debt division and an alimony award were made by a judgment entered October 30, 1984. An amended judgment was entered March 18, 1985. Husband appealed and wife cross-appealed.

Husband contends on appeal that the trial court erred in its: 1) failure to consider the impact of income taxes in the awarding of husband's pension and profit sharing plans; 2) failure to consider the impact of income taxes and overhead in valuing husband's accounts receivable; 3) valuation of goodwill in husband's medical practice (a corporation wholly owned by husband); 4) valuation of the stock of the medical corporation; 5) awarding to wife a vehicle which was part of the medical corporation's assets while awarding all the stock to husband; 6) awarding wife post-divorce interim support; 7) failure to change the value of the "Jordan River Note" for a post-trial but prejudgment payoff which was higher than the stipulated value of the note; 8) unequal award of household goods; 9) abuse of discretion in awarding wife attorneys' fees and costs.

Wife challenges the trial court's: 1) award of all post-divorce income and appreciation of the pension and profit-sharing plans to husband; 2) characterization of the residence as community property; 3) termination of interim support; 4) denial of future alimony; and 5) valuation of husband's accounts receivable. Wife also requests attorneys' fees on appeal.

## FACTS

The parties were married in 1945. Husband is a surgeon with his own medical practice. Wife is not employed. There are no minor children. The property of the parties consists of four pension and profit sharing plans maintained by husband's medical corporation for husband's benefit, with a stipulated value on May 13, 1983 of $395,794.29; a residence with a stipulated value of $212,500, owned free and clear by the parties; husband's medical corporation; a $79,000 money market account which was divided during the parties' separation; miscellaneous investment assets, vehicles, household goods, furniture, art objects, jewelry and the like. The parties had no major debts other than attorneys' fees. The net community estate, as found by the trial court, was in excess of $800,000.

## DISCUSSION

### I. Residence

Wife appeals the decision of the trial court that the parties' residence was community property at the time of divorce. The trial court found that husband had deeded his community interest in the parties' residence to wife in 1976, because of fear of possible future malpractice judgments against him. The trial court further found that the transfer was not in defraud of creditors and did not constitute a fraudulent conveyance. The trial court also found that husband lacked donative intent and the deed was insufficient to transfer his community interest in the residence. Wife challenges this finding. After reviewing the record, we find substantial evidence to support the trial court's finding of no donative intent. When supported by substantial evidence, the trial court's findings will not be overturned on appeal. *Boone v. Boone,* 90 N.M. 466, 565 P.2d 337 (1977).

■ It is undisputed that the residence was initially community property. The issue before the court was whether the community property was transmuted into separate property. The standard of proof is clear and convincing evidence. *Nichols v. Nichols,* 98 N.M. 322, 648 P.2d 780 (1982); *Estate of Fletcher v. Jackson,* 94 N.M. 572, 613 P.2d 714 (Ct.App.1980). A mere deed does not constitute complete transfer; there must also be delivery. *Martinez v. Archuleta,* 64 N.M. 196, 326 P.2d 1082

(1958). Moreover, the "grantor's present intent must be to pass his complete title to the grantee and divest himself of all title; otherwise the purported deed is not valid or effective." *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 428, 611 P.2d 1119, 1122 (Ct.App.1980), citing *Williams v. Pacific Royalty Co.*, 247 F.2d 672 (10th Cir.1957). Whether the requisite intent was present was a question of fact. The court's determination that there was no intent to give the property to wife was supported by substantial evidence.

■ Wife argues that husband's purposes in making the deed were to commit tax fraud and to defraud creditors, and that the court should, as a matter of equity, refuse to relieve husband of the consequences of his improper actions. The trial court found that the purported transfer was not fraudulent. There were no creditors to defraud and husband's purpose to reduce future taxes on his estate is legitimate tax planning. *Cf. Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). We hold that the trial court's findings and conclusions that there was no fraud and that the community residence was not converted into wife's separate property were supported by substantial evidence. Such findings and conclusions will not be disturbed on appeal.

## II. Changes in Value of the Parties' Property During Litigation

Several of the issues involved in this appeal result from the fact that the dates of divorce, trial, decision and judgment are each many months apart. On May 18, 1983, the trial court entered a partial decree of divorce dissolving the parties' marriage and reserving jurisdiction to rule on all remaining issues (property division, alimony and attorneys' fees). The trial was held December 27–29, 1983, and final argument on February 1, 1984. The trial court filed its findings and conclusions on June 29, 1984, and entered judgment on October 30, 1984. Hearings on post-judgment motions were heard November 20, 1984, and a

hearing on wife's attorneys' fees was held January 15 and 21, 1985. On March 18, 1985, the trial court entered supplemental findings and conclusions and its amended judgment.

### A. Changes in Pension and Profit Sharing Plans

The trial court, as part of the equalization of the community property disposition, awarded $284,931.24 of the four pension and profit sharing plans (Plans) to Husband and $100,863.05 to Wife.[1] In its original judgment, the trial court correctly awarded one-half of all post-divorce accumulations to each party. It found that "[t]he community interest of the parties in [the Plans] * * * became a tenancy in common interest with the entry of the Partial Decree." *See Jones v. Tate*, 68 N.M. 258, 360 P.2d 920 (1961), and *In re Miller's Estate*, 44 N.M. 214, 100 P.2d 908 (1940). *See also Hickson v. Herrmann*, 77 N.M. 683, 427 P.2d 36 (1967), and NMSA 1978, § 40–4–20 (Repl.Pamp.1986).

In its amended judgment, however, the trial court reversed its decision and awarded husband all post-divorce earnings and increases in the Plans.

■ When two parties hold personal or real property as tenants in common, they each have a separate and distinct interest in the property that cannot legally be transferred or extinguished by the other co-tenant. *See generally*, 4 *Thompson On Real Property* §§ 1793 to –99 (J. Grimes, Repl.1979). The trial court apparently found that the retirement benefit plan increases from the date of the partial decree were the result of passive earnings and appreciation. Any increases, therefore, should be shared equally.

Several New Mexico cases have stated that community property is to be divided according to its value on the date of divorce, *e.g.*, *Hurley v. Hurley*, 94 N.M. 641, 615 P.2d 256 (1980), and *Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978). These cases involved property division

---

1. The combined awards total $385,794.29, not $395,794.29. This is a mathematical error which can be corrected on remand by the award of an additional $5,000 to each party.

judgments which were simultaneous with the divorce decree (unified divorce), and not cases where a partial decree of divorce is entered before the division of community property (bifurcated divorce). These cases, therefore, do not address the issue of disposition of the community's property where its value has changed during the period between entry of a partial divorce decree and entry of the final property division judgment. Similarly, *Madrid v. Madrid*, 101 N.M. 504, 684 P.2d 1169 (Ct.App.1984), involved increases in an employee spouse's retirement benefits which occurred after entry of the property division judgment awarding benefits to the husband. It did not involve increases earned after a partial divorce decree but before a property division judgment.[2]

Husband asserts that, even if he were not entitled to all post-divorce increases in the Plans as a matter of law, the trial court's amended judgment should be upheld for three additional reasons: 1) the parties stipulated to a value of $395,794.29 for the Plans; 2) the parties stipulated to the divorce date as the valuation date of all assets; and 3) other major assets were valued as of the divorce date and this asset must be valued as of that date because all assets must be valued as of the same date. We are not persuaded.

■ The record shows that the parties stipulated that the value of the accumulated community interest in the Plans was $395,794.29 "at the time of the dissolution of the marriage of the parties." There were no stipulations that the value of the Plans, for purposes of property division, was $395,794.29. At trial, wife requested a division of the then current balances in the Plans, while husband asked the trial court to discount the value of the Plans for tax consequences. Nor did the parties stipulate that the date of divorce would be the valuation date for all assets. They did stipulate that the residence was worth $212,000; and both parties, while disputing

the value of Husband's medical practice, used the same valuation date, i.e., the end of the medical corporation's fiscal year and not the date of divorce. Although the date was only two weeks after the partial divorce decree, it could well have been chosen because year-end financial statements were available.

■ The question remains whether, in the absence of a stipulation, all assets must be valued on the same date. Husband has cited no New Mexico authority on this question. For husband's argument to prevail, we must conclude that a single valuation date is required because without it equal division of property could not be accomplished. We do not so conclude. The trial court is required to determine the extent of the community property in order to divide it equally, *Otto v. Otto*, 80 N.M. 331, 455 P.2d 642 (1969), but it is not required to value and divide the property with mathematical certainty. *Bustos v. Bustos*, 100 N.M. 556, 673 P.2d 1289 (1983); *Ridgway v. Ridgway*, 94 N.M. 345, 610 P.2d 749 (1980). Husband complains that the value of the residence awarded to wife may well have increased since the date it was valued, and that may be true. At trial, he did not request consideration of such increase, whereas, wife explicitly requested the trial court to divide all the funds in the Plans between the parties, including funds earned after the partial divorce decree.

■ Finally, husband argues that wife did not submit evidence to the trial court of the actual increased value of the Plans. Although she did not present evidence at trial of the value of the increases since the divorce, it was found that no monies were contributed to the Plans since the divorce, and all increases were passive and attributable to the original community property. Thus, it was proper for the trial court to make an "in-kind" division of half the increase to each party.

**2.** The parties in *Madrid* did have a bifurcated divorce, but the original property division judgment awarded the retirement based upon the benefits Mr. Madrid was receiving at the time of the divorce. After remand, the trial court then valued his benefits based on increases he received after the original property division judgment. What was disapproved in our *Madrid* decision was inclusion of *post judgment* increases.

As an equal tenant in common of the Plans with husband, wife was entitled to receive one-half of the earnings and increases in value from the divorce date until the parties' interests were partitioned by entry of the trial court's original judgment of October 30, 1984. The amended judgment is, therefore, vacated insofar as it relates to the post-divorce increases and earnings of the Plans.

■ But what of increases and earnings since the date of the original judgment? Wife urges us to award her one-half of the earnings and appreciation until the date she actually receives her share. She ignores the effect of the judgment, which is to fix each party's share of this asset. Therefore, all increases and earnings since the date of judgment shall be apportioned between the parties according to each party's percentage of ownership as of the date judgment was entered. *Madrid v. Madrid.* For example, if the Plans increased in value by $50,000 between May 8, 1983 and October 30, 1984, wife's share as of the date judgment was entered is $130,863.05, and husband's is $314,931.24, for a total of $445,794.29. Because of equal division of the post-divorce increases, wife's share would have increased to 29% of the total. She would therefore receive 29% of increases since October 30, 1984, and husband 71% of those increases.

B. *Changes in Value of the Jordan River Note*

On appeal, husband raises the issue of the change in value of a promissory note owned by the parties between the date of the trial and the date of judgment. At trial, the parties stipulated that the note had a discounted value of $8,000 due to the uncertainty of further collections under the note, and the parties further agreed the note should be awarded to wife. The trial court incorporated the agreements of the parties in its decision entered June 29, 1984. However, on June 22, 1984, wife received $11,500 as payment in full on the note. The trial court was not apprised of the payment on the note until a stipulation was filed July 16, 1984, and the matter was raised in husband's August 31, 1984 motion for reconsideration or new trial. Husband contends the disposition of the property of the parties should be modified to reflect the increased value of the note.

This is a different issue than the increases in value of the Plans. The change in value of the note occurred after its value was set at trial. The trial court was apprised of the change after it had rendered its decision changing ownership of the note from tenancy in common to wife's separate property. This is a post-trial and post-decision matter, and is governed by SCRA 1986, 1–059 and 1–060.

■ Husband did not ask the trial court to consider the payment on the note to be newly discovered evidence; he cannot argue that theory for the first time on appeal. *Strickland v. Roosevelt County Rural Elec. Coop.*, 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983).

■ Husband also argues that the trial court should have treated the $3,500 as undivided community property pursuant to Section 40–4–20. We disagree. The asset was divided by awarding it to wife and charging her with the value stipulated to at trial. Moreover, property divided pursuant to Section 40–4–20 must be divided in an *independent* action. *Zarges v. Zarges*, 79 N.M. 494, 445 P.2d 97 (1968). The trial court's valuation of the note is affirmed.

III. *Tax Consequences of Pension and Profit Sharing Plans Award*

Husband complains that the trial court erred in failing to consider the tax consequences of the unequal division of the Plans. He argues that if wife ever sells the house she will be able to take advantage of special tax rules for individuals over 55 years of age that will protect her from paying taxes on any income from the sale. Thus, he argues that he will suffer tax consequences to a greater degree than wife when the retirement benefit plan benefits are distributed.

■ Our recent decision in *Mattox v. Mattox*, 105 N.M. 479, 734 P.2d 259 (Ct.

App.1987), resolves this issue. Future tax consequences of deferred pension payments are too speculative and should be disregarded in calculating the present value of the pensions. The trial court's conclusion to that effect is correct, and its valuation of the Plans is affirmed.

## IV. *Substantial Evidence Questions*

Several of the issues raised by the parties in this appeal involve claims that there was not substantial evidence to support the trial court's findings. A discussion of the issues follows:

### A. *Accounts Receivable*

Both parties and the trial court treated husband's medical corporation accounts receivable as a separate asset. Both parties' figures for gross receivables were approximately the same, about $44,000. Wife's opinion, based on her experience of having worked with the accounts in husband's office, was that $31,907 of the receivables would be collected. Husband's expert discounted for noncollectibility, to arrive at a figure of $24,329 for collectible receivables. He then deducted $14,628 as one-half the corporation's annual overhead for clerical, rent, and other items, to arrive at a net pre-tax figure of $9,701. To this last figure, he applied a 50% tax rate to arrive at his final figure of $4,851. The trial court found the value of the accounts receivable to be $24,329. No specific findings of fact were made with respect to how that figure was ascertained; however, it corresponds to the husband's figure after allowances are made for uncollectibility.

In evaluating the evidence, the trial court need not have arrived at a figure that corresponded to either party's requested figures, nor was the court bound to the testimony of one expert. *Hardin v. State Tax Comm'n*, 78 N.M. 477, 432 P.2d 833 (1967); *Mattox v. Mattox.*

■ Husband's claim that overhead and income taxes were not taken into account is not founded upon any specific finding of fact. Apparently none were requested with respect to that methodology. Even if the trial court chose not to make deduc-

tions for taxes and overhead, its decision will be upheld if such deductions are not based upon evidence and are speculative. The alleged overhead costs of collecting the accounts in this case were admitted by husband's expert to be highly speculative. He indicated that it was unknown whether the office would even be open. In such a case, refusing a deduction for overhead expenses is certainly reasonable. *See In re Marriage of Goldstein*, 120 Ariz. 23, 583 P.2d 1343 (1978).

■ Although the evidence was scanty, the trial court was entitled to rely upon what was admitted in determining the present value of accounts receivable. Upon reviewing the record, we found nothing that would indicate an abuse of discretion in reaching a figure of approximately 50% of face value. The trial court's figure for the value of accounts receivable is affirmed.

### B. *Goodwill*

Both parties submitted expert testimony on the value of husband's goodwill. Each party's expert opined that husband earned more in private practice than he would as a salaried employee; both experts used a capitalization of excess earnings approach to value goodwill; and both experts applied low capitalization rates to the excess earnings. The testimony differed primarily on the issue of what constituted excess earnings.

Husband's expert, an economist, began with husband's average annual base salary. He did not add in the value of any of husband's fringe benefits or personal expenses paid by the corporation for husband. He then assumed, based on published figures, that husband's salary was 30% higher than it would be if he were only an employee. He discounted one-half of that 30% differential for the inconvenience of being an owner of the business. He then applied a 50% income tax rate to the remaining 15% of husband's base salary to arrive at net excess earnings of $4,023. To this he applied a capitalization rate of one because of husband's age and health and

the personal nature of a medical practice. He opined that the value of goodwill would be $4,023 if based on capitalization of excess earnings, or zero if based upon salability of the practice.

Wife's expert, a certified public accountant, added to husband's average base salary the value of certain fringe benefits, such as the corporation's contributions to the pension plans and the personal expenses paid for husband by the corporation, for a total average compensation of $71,335. She subtracted from that figure the salary paid to a public hospital surgeon to arrive at excess earnings of $21,335, to which she applied a capitalization rate of two. Her goodwill figure was $42,670.

The trial court adopted wife's figure of $71,335 as husband's average annual earnings and deducted 70% of that amount, based upon the assumption used by husband's expert, to arrive at excess earnings of $14,345. The trial court then applied husband's capitalization rate of one, for a goodwill amount of $14,345.[3]

Husband objects that there was no evidence to support the opinion of wife's expert. The trial court adopted her opinion on only one element: What fringe benefits should be added to husband's base salary to determine his annual gross income. There was ample evidence to support those additions, which included, in one year, a payment of more than $5,000 of husband's personal legal fees and a contribution to his pension and profit sharing plans in an amount equal to 25% of his base salary. Even Husband's expert did not state that those were expenses normally paid by an employer for a salaried physician.

■ Husband objects to the trial court's adoption of part but not all of his expert's calculations. The trial court is not required to adopt in toto the testimony of either expert. *Hardin v. State Tax Comm'n.* We uphold the trial court's valuation of goodwill.

**C.** *The Value of the Stock of Husband's Medical Corporation*

■ The trial court found that the value of husband's medical corporation consisted of the goodwill and accounts receivable, plus $21,000 in office equipment, $590 in current assets and $1,677 for investments. Husband objects that the trial court did not adopt the corporation's year-end financial statement, showing assets at depreciated book value and accrued liabilities at book value. That argument is without merit. Wife testified that in her opinion the actual value of the office equipment was $21,000 and the trial court was entitled to believe her. An owner is competent to give opinion testimony on the value of community property. *Lahr v. Lahr,* 82 N.M. 223, 478 P.2d 551 (1970).

■ Husband further objects to the trial court's valuation of the corporation on the basis that it omitted $4,307 in liabilities for accrued payroll and gross receipts taxes. The $4,307 figure came from the year-end financial statement of the corporation which was introduced by wife to show the value of certain assets of the corporation. Husband has cited to no evidence that the figures for accrued taxes were accurate, or due and payable. In short, husband has failed to cite to any of the evidence submitted on this issue. It is not wife's obligation or the obligation of this court to comb the record to determine whether substantial evidence was introduced. That is husband's burden, and he has failed to meet it. Therefore, we will not consider his claim of error based on omission of liabilities. *City of Farmington v. Sandoval,* 90 N.M. 246, 561 P.2d 945 (Ct.App. 1977).

It should be noted that there was undisputed evidence that husband withdrew $5,000 from the corporation between the date of the partial divorce decree and the end of his fiscal year. The trial court did not assess this withdrawal against husband. Wife argues that the trial court could have offset the liabilities by hus-

---

**3.** The trial court made an error in arithmetic in reaching the $14,345 figure. Subtracting 70% of $71,335 from that amount leaves an excess earnings figure of $21,400. This error is subject to correction upon remand.

band's $5,000 "bonus." We cannot speculate that this was what the trial court did or intended to do, but we do not have to reach this issue because of husband's failure to provide this court with adequate citations to the record. The trial court's determination on this issue is affirmed.

### D. *The Volkswagon*

The parties' 1980 Volkswagon was carried on the corporate books at a depreciated book value of $1,500. The trial court awarded it to wife at a value of $3,000. Husband argues that the trial court charged him with this asset when it awarded him assets of the corporation. His claims are without merit. Wife's testimony was clear and explicit that her $21,000 figure for husband's office equipment did not include the car. The record does not support husband's assertion that the $21,000 in office equipment included this vehicle. Once again, husband fails to cite to the evidence submitted on this issue. The trial court's determination on this issue is affirmed.

### E. *Household Goods*

Husband's claim that the trial court lacked substantial evidence to support its award of furniture and household goods is likewise without merit. A review of the record shows that there was substantial evidence to support the trial court's award of the household goods, and it is affirmed.

### V. *Support*

### A. *Post-Divorce Interim Support*

The trial court found that the parties made an agreement to divide their income, that husband breached the agreement in July 1983, and that wife was entitled to support from husband according to their agreement for the months of July through December 1983. Husband contends that this award was not supported by substantial evidence, and that the division of income should have ended with the entry of the partial decree.

Husband has failed to cite evidence supporting his contention that the parties intended the interim support to end on the date of divorce. Wife's argument that the parties agreed to share income until complete division of the community property is, similarly, not supported by the evidence. We have carefully reviewed the record and hold that the trial court's award of interim support between divorce and trial dates was supported by substantial evidence.

### B. *Permanent Alimony*

The parties were married in 1945, when wife was 23. She was 62 at the time of trial. Husband was 22 years old and in medical school at the time of the marriage. The parties had three children born two, four and six years after the marriage. Wife did not work outside the home until 1973, when the parties moved to New Mexico and she helped husband establish his surgical practice by working as his secretary and assistant for three years. Thereafter, until the parties' separation in late 1981, she worked part-time doing husband's in-house bookkeeping. After the separation she held two temporary jobs, one at minimum wage and one at $5.00 per hour. In order to update her clerical skills she took some word processing courses. Wife has a B.S. degree in history, earned before the parties' marriage. She has basically good health except for arthritis in her hands, for which she was scheduled to have surgery a few days after the trial. In the five years preceding the divorce, husband cut back his surgical practice because of his arthritis and advancing age. In the year which culminated in the divorce, husband paid himself a salary, pension and profit sharing plan contributions and personal expenses totaling $88,296. Wife testified that she required $2,060 per month, after taxes, for living expenses.

The trial court made the following findings of fact on the issue of alimony:

[Finding] 48. Petitioner reasonably requires the sum of $1,300 per month, after taxes, to maintain herself on a conservative level.

[Finding] 49. Petitioner has earned a return on her ready market account for the most recent month of approximately 8.4% which represents a reasonable return that she can continue to expect on monies invested by her.

[Finding] 50. Petitioner will receive the approximate $136,000 suggested to be distributed to her from the pension and profit sharing plans, she can anticipate income to adequately support herself.

Based upon those findings, the trial court denied alimony. The trial court later entered supplemental findings of fact that related to alimony:

[Finding] 1. The Court has determined that Petitioner should not be awarded alimony because the income from the assets previously awarded to her in the division of property between the parties would be just sufficient to allow Petitioner to maintain herself on a conservative level.

[Finding] 2. There is a significant disparity between the parties and their respective income-producing potentials and their economic status following the divorce.

▉▉▉ Wife objects to the trial court's finding that $1,300 is an appropriate budget. While we may have made a different determination of need for a 62–year-old woman who had been married almost her entire adult life to a professional, we cannot say that, based upon the evidence before it, the trial court abused its discretion.

Wife points out a factual error in the trial court's finding no. 50: she was actually awarded only $101,000 from the Plans, not the $136,000 assumed by the trial court. Wife argues that the funds she was awarded are insufficient to meet her approved expenses when invested at 8.4%. It is unclear to us whether the trial court made a finding that income from the Plans alone was sufficient to provide wife with $1,300 per month, or if other sources of income, potential or actual, were considered. If the former, the finding is not supported by substantial evidence. Wife's income from the Plans would be $700 per month before taxes at the rate of return

approved by the trial court. The evidence was also insufficient to support a finding that the actual income available to wife from all income producing property was adequate to meet her needs. Wife's other sources of income at the time of trial totalled approximately $46,000 which, if invested at the approved rate of return, would earn an additional $300 per month, before taxes. The combined income would be insufficient to meet her needs.

▉▉▉ Husband points out that a finding that wife needs $1,300 per month is not a finding that she is dependent upon husband for that sum. Husband is correct. The trial court could properly have taken potential sources of income into account, but it must make sufficient findings concerning wife's ability to support herself from this potential income, so that we are able to determine the basis for the denial of alimony. We do not believe that the findings that were made are adequate in this regard.

▉▉▉ No one factor, such as wife's means to support herself, may be considered in isolation; it must be considered in the context of the other factors such as age and duration of the marriage. In *Lovato v. Lovato*, 98 N.M. 11, 644 P.2d 525 (1982), the supreme court specifically warned that the concept of rehabilitation must be applied "with due consideration for other factors such as age, health, opportunities for employment, etc." 98 N.M. at 13, 644 P.2d at 527.

The cases that have required "rehabilitation" for an alimony recipient or that have denied alimony because the would-be recipient could support herself by full-time employment involve younger women with more job skills and shorter marriages than we have in this case. *See, e.g., Hodges v. Hodges*, 101 N.M. 67, 678 P.2d 695 (1984) (wife was 34 years old, four year marriage); *Merrill v. Davis*, 100 N.M. 552, 673 P.2d 1285 (1983) (wife was 36 years old, quit her job after the parties separated, first marriage of four years); *Howard v. Howard*, 100 N.M. 105, 666 P.2d 1252 (1983) (wife was 39 years old with job expe-

rience); *Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983) (wife was 29 years old, had Master's degree and working on PhD, 9–year marriage); *Seymour v. Seymour*, 89 N.M. 752, 557 P.2d 1101 (1976) (wife had varied job experience and skills, 13–year marriage, no children); *Blake v. Blake*, 102 N.M. 354, 695 P.2d 838 (Ct.App.1985) (wife was 37 years old and employable, 13–year marriage).[4]

■ We have previously recognized the importance of distinguishing these cases from those involving older women, longer marriages and especially marriages where the wife's primary role was that of home-maker. *See Bilbao v. Bilbao*, 102 N.M. 406, 696 P.2d 494, (Ct.App.1985). The concept of rehabilitative alimony must be viewed in the context of the parties' joint expectations when they made the marriage contract, how long they have spent fulfilling those expectations, how much of their lives remains to change their mode of living, and whether the means and ability to change are at hand—in other words, the duration of the marriage, the age and health of the parties, their employment experience and opportunities. We hold that wife, a 62–year–old spouse whose marriage is dissolved after almost four decades, whose marital role was primarily that of a homemaker, and whose spouse is well able to afford alimony, has no obligation to "rehabilitate" herself. *See Bilbao v. Bilbao; Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984).

Because of the lack of necessary findings on this issue, we must remand for further consideration of this point. While we do not reverse the trial court's imposition on wife of a $1,300 per month standard of living, it may be that this level was originally set in consideration of wife's not having any presumed potential income; if so, the expense level must be reconsidered, with the reconsideration of the issue of presumed or potential income, in order to make a decision that is fair to both parties. "It is the duty of the trial court to make a decision based upon *all* the facts and upon *all* the considerations that will result in fairness to both parties involved in an alimony and support situation." *Lovato v. Lovato*, 98 N.M. at 13, 644 P.2d at 527 (emphasis added). All factors must be considered together in light of the facts of the individual case. *See Bilbao v. Bilbao; Russell v. Russell.*

## VI. *The Trial Court's Award of Attorneys' Fees*

The granting of attorneys' fees is a matter left to the discretion of the trial court subject to reversal only on a showing of abuse of discretion. Award of attorneys' fees is not to be disturbed on appeal unless the award is so patently erroneous as to reflect an abuse of discretion. Ability, standing, skill and experience of the attorney; the nature and character of the controversy; the amount involved, the importance of the litigation and the benefits derived therefrom are all factors to be considered by the trial court in granting attorneys' fees. *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976).

■ The trial court made findings on the issue of attorneys' fees that wife's income as "just sufficient to allow [her] to maintain herself on a conservative level;" that there was a significant disparity between the parties' income-producing potentials and their post-divorce economic status; that wife was required to retain an attorney to properly present her case; that she reasonably incurred fees of $23,963.84 in this case; that both parties had attorneys of ability, skill and standing in domestic cases; and that the issues were numerous, complex and vigorously litigated. There is substantial evidence to support each of these findings and they are sufficient to support an award of $23,963.84. The trial

4. Compare where alimony allowed, *e.g., Russell v. Russell*, 101 N.M. 648, 687 P.2d 83 (1984) (wife was 55 years old, very little job experience and poor health, married 17 years); *Psomas v. Psomas*, 99 N.M. 606, 661 P.2d 884 (1982) (22–year marriage before separation, plus seven or more years post-separation, wife unable to work); *Chrane v. Chrane*, 98 N.M. 471, 649 P.2d 1384 (1982) (wife was married 23 years, 2 adult children); and *Bilbao v. Bilbao*, 102 N.M. 406, 696 P.2d 494 (Ct.App.1985) (wife was age 46, with a B.A., limited job experience).

court did not abuse its discretion in awarding attorneys' fees and costs and its decision will be upheld.

### VII. *Attorneys' Fees on Appeal*

 This appeal was extensive and complicated. Several of husband's issues on appeal were frivolous. We award wife her attorneys' fees and costs incurred with respect to husband's appeal and her cross-appeal in the amount of $4,000.

This case is remanded to the trial court for action consistent with this opinion.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.