**Certiorari Denied, December 11, 2013, No. 34,414**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-030**

**Filing Date: August 12, 2013**

**Docket No. 31,547**

**ROSALYN CLARK**,

      **Petitioner-Appellant,**

**v.**

**FRANK CLARK,**

      **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Elizabeth E. Whitefield, District Judge**

Atkinson & Kelsey, P.A.
Thomas C. Montoya
Albuquerque, NM

for Appellant

Johnson Family Law, P.C.
Barbara V. Johnson
Albuquerque, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**      Wife appeals the district court's award of spousal support for a fixed eighteen-month term that was based upon the apportionment of wages between Husband and the community but that excluded certain income distributions from Husband's separate Subchapter-S corporation. Wife asserted three claims of error. We have determined that this matter should now be remanded to the district court to address two of the issues raised. First,

1

subject to certain exceptions, income received from a Subchapter-S corporation owned by a spouse is included when calculating spousal support. Second, the duration of spousal support is controlled by the recipient spouse's ability to become self-sufficient. Neither of these two issues were adequately addressed by the district court nor was an adequate explanation provided for the deviation from the standards prescribed to establish the duration of spousal support and the inclusion of Husband's income from the Subchapter-S corporation. As a result, we affirm in part, reverse in part, and remand for further proceedings.

**BACKGROUND**

**{2}** Husband and Wife were married in California in 1998. Wife did not work outside the home during the marriage, although she received income of $3,220 per month as an officer of Husband's separate property business, IPR, Ltd. IPR is a Subchapter-S corporation and Husband is the sole owner and operator of the business.

**{3}** As a Subchapter-S corporation, all profits and losses from IPR (the K-1 allocations) were passed through to Husband, who paid taxes on the parties' individual income tax return at individual income tax rates. During the marriage, Husband also received both a regular salary from IPR (W-2 income) as well as additional cash distributions from IPR (non-W-2 income), both of these sources of funds were deposited into the same bank account. The district court appointed a Rule 11-706 NMRA financial expert who supplied a three-year summary of wages and other distributions paid to Husband by IPR. The average annual wages reported as W-2 income over the three-year period was $423,413, and the average annual non-W-2 income distributed from IPR was $212,020. The record established that the non-W-2 income distributed from IPR did not match up with the K-1 allocations from IPR that were reported on the parties' tax returns. Based upon this evidence, the district court found that it could not determine from the record what portion of the overall allocations from IPR were actual income received by Husband and what portions were unrelated to income or intended to defray additional income taxes arising from the K-1 allocations received from IPR. Accordingly, based on Husband's W-2 income alone, it calculated Husband's gross pre-tax income for spousal support purposes as $35,284 per month. The district court also determined that a comparable salary for the field work Husband was performing as a project manager for IPR was only $8,333 per month. Despite the difficulties with calculating Husband's significant income from IPR, Husband's pending retirement was also a consideration identified by the district court in making its decision regarding spousal support.

**{4}** At the time of the final decree of divorce, Husband was 66 years of age, and Wife was 60. Husband's job was physically demanding and, due to his age and health, he wanted to retire. In fact, Husband testified that the pending divorce action was the only reason he had not retired.

**{5}** The parties did not introduce any evidence of Wife's earning capacity and did not

anticipate Wife's return to work as a viable reality under the circumstances presented to the district court. Wife submitted a budget to the court alleging that her reasonable support needs were $20,078 per month. The district court found that many of Wife's alleged expenses were unreasonable or not supported by the evidence. The district court explained, as examples, that "$200 per month for a psychic is not a reasonable therapy expense," and "[v]acations of $1,000 per month [are] not reasonable for an unemployed person." It also considered Wife's lack of effort to become self-supporting and the fact that "[b]oth parties are of retirement age and need to transition to retirement." The district court awarded Wife transitional spousal support for an eighteen-month period, in the amount of $6,500 per month, without any findings regarding how she would be supporting herself thereafter.

**{6}** The district court entered its final decree of divorce and order on July 13, 2011. The court later entered a stipulated order modifying the final decree on August 2, 2011. Wife timely filed her notice of appeal to this Court.

## DISCUSSION

### Spousal Support

#### A.  Standard of Review

**{7}** Spousal support represents a substitute for or a continuation of the right to support that the spouse had during marriage. *Ellsworth v. Ellsworth*, 1981-NMSC-132, ¶ 1, 97 N.M. 133, 637 P.2d 564. In determining whether to order spousal support, the district court is to consider: (1) the needs of the proposed recipient, (2) the proposed recipient's age, health, and means of self-support; (3) the proposed payor's earning capacity and future earnings; (4) the duration of the marriage; and (5) the amount of property owned by the parties. *See Michelson v. Michelson*, 1974-NMSC-022, ¶ 8, 86 N.M. 107, 520 P.2d 263. The actual need of the proposed recipient is a focal consideration in determining whether to order spousal support. *Mattox v. Mattox*, 1987-NMCA-021, ¶ 29, 105 N.M. 479, 734 P.2d 259.

**{8}** The district court has wide discretion to award spousal support, and its decision will only be set aside if it constitutes an abuse of discretion. *See Martinez v. Martinez*, 1997-NMCA-125, ¶ 10, 124 N.M. 313, 950 P.2d 286; *Ellsworth*, 1981-NMSC-132, ¶ 2. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. Further, to establish an abuse of discretion, "it must be shown that the court's ruling exceeds the bounds of all reason or that the judicial action taken is arbitrary, fanciful, or unreasonable." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 29, 128 N.M. 536, 994 P.2d 1154 (alteration, internal quotation marks, and citation omitted). "When there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." *Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323. "Where the court's discretion is fact-based, we must look at the facts relied on by the [district] court as a basis for the exercise of its discretion, to determine if these facts are

3

supported by substantial evidence." *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 60, 134 N.M. 77, 73 P.3d 215 (internal quotation marks and citation omitted).

## B.     Amount

**{9}**      Wife contends that the district court abused its discretion in calculating the amount of spousal support.  The issue before this Court is whether the district court should have considered the non-W-2 income distributions from IPR when it calculated Husband's current earnings for spousal support purposes.  Wife asserts that it was an abuse of discretion for the district court to base its spousal support calculation only on a portion of Husband's W-2 wage income and not on the total amount of his income from IPR because NMSA 1978, Section 40-4-7(E)(2) (1997) requires the non-W-2 income distributions to be included in this calculation.  Under the particular facts of this case, we agree with Wife on this issue.

**{10}**      As an owner of IPR, Husband is required to include in the parties' personal tax return the portion of IPR's income as set forth in the K-1 allocations to Husband.  *See Ashmore v. C.I.R.*, T.C. Memo 2013-137 (recognizing that even where a taxpayer did not receive a tax document such as a form W-2 or schedule K-1, the taxpayer is not excused from his or her duty to report the income on a federal income tax return).  Allocations of corporate income are not the same as distributions of corporate income.  The non-W-2 income that is actually distributed by IPR is available to be consumed by the parties and can also be used to pay the increased tax obligations incurred as a result of the K-1 allocations issued to Husband by IPR.  Important to this analysis, the non-W-2 income distributions from IPR that exceed the amount necessary to pay corporate business expenses or the shareholder-spouse's tax obligations are considered income for purposes of calculating family support obligations.  *See, e.g.*, NMSA 1978, § 40-4-11.1(C)(2)(b) (2008) (defining, for purposes of child support, a self-employed parent's gross income as gross receipts minus ordinary and necessary expenses required to produce such income); *see In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484-85 (Iowa 2012) (requiring the inclusion of husband's distributions from his Subchapter-S corporation that are not used for business or to pay tax liabilities).

**{11}**      Only income that has been retained by a corporation for corporate purposes or distributed to a shareholder-spouse in an amount sufficient to pay business-related expenses or tax obligations would be deemed unavailable for use by a shareholder-spouse to satisfy the financial obligations imposed by a dissolution of marriage.  *See* NMSA 1978, § 7-4-2(A) (1999) (defining "business income" as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and income from the disposition or liquidation of a business or segment of a business"); *Roberts v. Wright*, 1994-NMCA-022, ¶ 9, 117 N.M. 294, 871 P.2d 390 (refusing to include a parent's corporate earnings, over the amount actually received in payment, in child support calculations); Brett R. Turner, *Classifying the Retained Earnings of a Separate Property Business as Marital Property*, 15 No. 8 Divorce Litig. 141 (2003) ("[T]he owner of a business should not be required to place protection of the marital estate above all other legitimate business concerns.").  As such, simply attributing K-1 allocations to a shareholder-spouse for tax purposes does not provide

4

a workable framework for the district courts to assess either the needs of the shareholder-spouse or the spouse's ability to pay support. *Caveney v. Caveney*, 960 N.E.2d 331, 342 (Mass. App. Ct. 2012) (noting that "there was no evidence to suggest that the actual amount of distributions made to the wife from the [S]ubchapter[-]S corporations bore any resemblance to the amount of the K-1 income reported by the wife for income tax purposes"); *see also* § 40-4-7(B)(1) (allowing the district court to award spousal support as may "seem just and proper" under the circumstances of the case); *Lovato v. Lovato*, 1982-NMSC-052, ¶ 8, 98 N.M. 11, 644 P.2d 525 ("It is the duty of the [district] court to make a decision based upon all the facts and upon all the considerations that will result in fairness to both parties involved in an alimony and support situation.").

**{12}** Actual cash distributions of corporate funds to a shareholder-spouse are the critical factor in calculating support, especially large non-W-2 income distributions that are received by the shareholder-spouse, deposited in the community bank account, and used to pay community living expenses and other needs. *See* § 7-4-2(E) (defining "nonbusiness income" as "all income other than business income"); *cf. Boutz v. Donaldson*, 1999-NMCA-131, ¶ 14, 128 N.M. 232, 991 P.2d 517 ("The definition of gross income in the child support guidelines represents a legislative effort to estimate 'actual cash flow,' that is the amount of money that will actually be available to support the children."). We conclude that Subchapter-S corporation funds actually distributed to the shareholder-spouse must be attributed to the shareholder-spouse as income for spousal support purposes unless and until the shareholder-spouse can demonstrate what portion of the corporate distribution was used for business purposes or to offset the payment of income taxes resulting from any K-1 allocations. *See, e.g.*, *Roberts*, 1994-NMCA-022, ¶ 8 ("The parent claiming a business expense must show not only that it is ordinary and necessary to the business, but also that it is irrelevant to calculating support obligations."); *see also Schenkelberg*, 824 N.W.2d at 484-85 (recognizing that it was logical to conclude that husband received more than just wages from the Subchapter-S corporation, his sole source of income, because he had sufficient additional income to pay his taxes and maintain his lifestyle without incurring any resulting debt); *cf. Champion Int'l Corp. v. Bureau of Revenue*, 1975-NMCA-106, ¶ 9, 88 N.M. 411, 540 P.2d 1300 (placing burden on the taxpayer to present evidence on the question of whether any of its income was nonbusiness income for purposes of disputing an assessment of taxes made by the bureau). With the burden resting on the shareholder-spouse, the district court must then carefully consider the particular facts of each case, especially where a shareholder-spouse does not clearly establish what portion of non-W-2 income actually distributed was necessary to offset any related business expenses or tax obligations resulting from the K-1 allocations received by the corporation. *See Ellsworth*, 1981-NMSC-132, ¶ 4 (explaining that spousal support is "based on need, ability to self-support, and the equities of the particular situation"); *see also Fennell v. Fennell*, 2000 PA Super 166, ¶ 10, 753 A.2d 866 ("[T]he owner of a closely-held corporation cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts. By the same token, however, we cannot attribute as income funds not actually available to or received by the party.").

**{13}**     This Court generally understands and recognizes that the calculation of a tax liability is not an exact mathematical science, but it can normally be accomplished within a reasonable margin of error. *Mattox*, 1987-NMCA-021, ¶ 23 (explaining that the district court should generally consider tax consequences when deciding a property settlement upon dissolution of marriage, but reasoning that "mathematical exactitude in the division of property is not required"). It is for the district court to address any unresolved disagreements that might result in the calculation of a tax liability when reviewing the evidence. Frustration and difficulty cannot be recognized as the proper basis for failing to calculate the shareholder-spouse's actual income received from a corporate entity, especially where the Subchapter-S corporation is the primary source of income to the parties. *See Entzie v. Entzie*, 2010 ND 194, ¶ 9, 789 N.W.2d 550 (noting that the district court must apply the proper guidelines to calculate current income even where an accurate depiction of income is difficult); *Pacella v. Pacella*, 492 A.2d 707, 713 (Pa. Super. Ct. 1985) (recognizing that earning capacity rather than salary was more appropriate to calculate spousal support where the husband had manipulated his corporation and "so commingled corporate and personal funds as to render efforts to separate the two extremely difficult").

**{14}**     Where corporate funds are actually received and used by the parties for their standard of living, any presumptions imposed to address financial questions to be resolved by the district court should not favor the shareholder-spouse. *See Roberts*, 1994-NMCA-022, ¶ 11 ("[I]f there is a disagreement about the appropriateness of the deduction, then the deduction must be justified by the party claiming the expense."); *see also Jurado v. Jurado*, 1995-NMCA-014, ¶ 28, 119 N.M. 522, 892 P.2d 969 (recognizing that it would be "unjust" to calculate child support using gross income attributable to husband's partnership if some of the income needed to be reinvested to sustain the business but requiring husband to show what is necessary to sustain his partnership). In addition, recognizing any form of bright-line rule that would effectively include or exclude Subchapter-S corporation distributions from a spousal support calculation would not be proper. *See Zold v. Zold*, 911 So. 2d 1222, 1231 (Fla. 2005) ("[A]n inflexible rule treating undistributed 'pass-through' income of a shareholder-spouse as available income in marital dissolution proceedings is contrary to corporate governance[.]"); *In re Marriage of Brand*, 44 P.3d 321, 328 (Kan. 2002) ("Courts have been reluctant, for policy reasons, to allow a blanket rule that retained earnings of a Subchapter[-]S corporation are not income to be considered when calculating support. Allowing support to be calculated in this way would encourage shareholders to retain earnings in favor of their own long-term financial interests without regard for the need for support."). The district court must be careful to avoid allowing the shareholder-spouse to manipulate salary, corporate distributions, and retained earning to his or her unfair advantage, thereby substantially skewing one's support obligations. *See Jurado*, 1995-NMCA-014, ¶ 26 (noting the potential for husband to manipulate his income in a way that would decrease child support payments by $98,411 annually); *Smith v. Smith*, 1992-NMCA-080, ¶ 22, 114 N.M. 276, 837 P.2d 869 (affirming the district court's imposition of a community lien against a husband's separate business where substantial evidence supported a finding that the business under-compensated the community during the course of the marriage); *Williams v. Williams*, 600 N.E.2d 739, 743 (Ohio Ct. App. 1991) ("[I]t would be

6

grossly inequitable to allow appellee to sit upon his assets, hide behind the shield of corporate business decisions, and prevent his children from enjoying the standard of living they would have enjoyed had the marriage continued."). The potential for manipulation is also much greater where the shareholder-spouse is a sole or majority shareholder of the corporation and, by virtue of his ownership and control, has authority to dictate all corporate distributions. *Zold*, 911 So. 2d at 1232; *In re Marriage of Brand*, 44 P.3d at 327 (stating that a minority shareholder has less ability to control the amount of corporate income retained); *Fennell*, 753 A.2d at 869 (requiring "[a shareholder-spouse who] is able to control the retention or disbursement of [corporation] funds . . . to [prove] that such actions were 'necessary to maintain or preserve' the business").

**{15}** We must apply these principles to the district court's rulings in the present case. It is uncontested that Husband received significant W-2 income as well as non-W-2 income distributions from IPR every year from 2008 to 2010. However, the district court wholly disregarded the non-W-2 income distributions when it calculated Husband's current earnings for purposes of spousal support, explaining that it was impossible to tell how much income Husband actually received from these non-W-2 income distributions. This finding is neither sufficiently developed nor explained by the district court. It fails to identify the difficulty in effectuating a proper calculation of Husband's actual income from IPR and does not explain why the resulting resolution of this issue presumptively favored Husband, the shareholder-spouse. Because the district court did not provide sufficient information to explain its exclusion of Husband's non-W-2 income distributions in the calculation of his income for spousal support purpose and because it did not explain why the difficulties in making these calculations should not be held against Husband as the shareholder-spouse, this Court is not capable of adequately reviewing these rulings.

**{16}** Basic logic also presents questions regarding the district court's decision to exclude Husband's non-W-2 income from the calculation of spousal support. Although the K-1 allocations did not match the non-W-2 income distributions made to Husband, it is clear that the distributions exceeded the allocation in 2009 by nearly $190,000. It does not take a Rule 11-706 expert or any special knowledge for this Court to recognize that Husband did not need a $362,877 non-W-2 income distribution of cash from IPR to pay his resulting increase in income taxes that are attributed to a $175,762 K-1 allocation. *See Rozelle v. Barnard*, 1963-NMSC-101, ¶ 2, 72 N.M. 182, 382 P.2d 180 ("[C]ourts will take judicial notice of matters of common and general knowledge."). To do so would require the court to recognize that the parties were in an income tax bracket that exceeded two hundred percent in 2009. The reality of such a financial scenario defies common sense.

**{17}** Without an explanation to support its rulings, we hold that it was an abuse of discretion for the district court to exclude all of Husband's non-W-2 income received from IPR when calculating spousal support and to shift the burden of proof to Wife, requiring her to show what portion, if any, of Husband's non-W-2 income should be included in the calculation of spousal support. Generally, the burden should have remained on Husband to prove what portion of the non-W-2 income distributions were used to offset the additional

taxes resulting from the K-1 allocations. *See Zold*, 911 So. 2d at 1233 ("The burden is properly on the shareholder-spouse because he or she has the ability to obtain information to establish the propriety of the corporation's actions."); *see also*, *Champion Int'l Corp.*, 1975-NMCA-106, ¶ 9 (requiring the disputing taxpayer to prove which income constituted nonbusiness income).

**{18}** Husband argues that we should address the issue on the basis of IPR's separate property status. We are not persuaded by Husband's argument. Alimony is based on the standard of living and needs of the respective spouses. *See Ellsworth*, 1981-NMSC-132, ¶ 4 ("Problems have arisen where the concepts of alimony and property division are mixed."). It is calculated based on the needs of each party after property distribution. *See Michelson*, 1974-NMSC-022, ¶ 9 ("Certainly an important factor in determining an award of alimony is the amount of property distributed to the wife as her share of the community interest. Upon its distribution it becomes her sole and separate property. What will her needs be after that distribution?"). Thus, there is no continuation of the community estate at the time the district court calculates alimony and it must base its calculations of need on the sole and separate assets belonging to each party at that time. *Id.*; *see Brister v. Brister*, 1979-NMSC-038, ¶ 17, 92 N.M. 711, 594 P.2d 1167 ("The focal point in each [alimony] case is the recipient's need for support."). Husband's argument that his separate property should not be considered when calculating alimony payments improperly merges the concepts of alimony and property division. As a result, we remand this matter to the district court for a factually definitive and legally reviewable calculation of Husband's IPR income. Upon recalculation, Husband's support obligation to Wife should then be adjusted as necessary.

## C.  Duration

**{19}** We now address Wife's contention that it was error for the district court to limit the duration of spousal support to eighteen months without evidence addressing the future circumstances of the parties. As Wife points out, Section 40-4-7(E)(2) calls for spousal support to be based upon factors including the "current and future earnings and the earning capacity of the respective spouses." "The appropriateness of an order for limited-duration rehabilitative support depends on the circumstances of the particular case." *Rabie v. Ogaki*, 1993-NMCA-096, ¶ 61, 116 N.M. 143, 860 P.2d 785.

**{20}** "[A district] court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction." *Id.* ¶ 10 (alteration, internal quotation marks, and citation omitted). As a result, rehabilitation awards that provide spousal support for a limited duration have generally involved younger recipients with substantial job skills and relatively short marriages. *See Lewis v. Lewis*, 1987-NMCA-073, ¶ 50, 106 N.M. 105, 739 P.2d 974. When a district court finds that a spouse is currently entitled to periodic spousal support but may later become self-sufficient, "the proper course is to order such support for an indefinite time, with the payor spouse bearing the burden to move for reduction or elimination of

8

support when it appears that the recipient spouse has in fact become more self-sufficient." *Rabie*, 1993-NMCA-096, ¶ 10.

{21}     The district court must make sufficient findings concerning Wife's ability to support herself in the future so that this Court is able to determine the basis for the termination of alimony after eighteen months.  At the time of the divorce, Wife was a sixty-year-old homemaker with no known prospects for any future earning capacity.  Wife testified about Husband's request that she not work outside the home during the marriage.  Thus, Wife lost her only marital source of income, previously derived from her position as a board member for IPR.  If she were to remain unemployed, as anticipated by the record in this case, Wife will have no future earnings other than her social security benefits.  Wife was, therefore, "economically disadvantaged by the marriage." *Bilbao v. Bilbao*, 1985-NMCA-016, ¶ 9, 102 N.M. 406, 696 P.2d 494.

{22}     Husband, on the other hand, has the ability to pay spousal support, especially during any future years that he continues to work.  We recognize that Husband is in declining health and planning to retire.  But as long as Husband has an interest in IPR, there is no reason to conclude that he will not continue to receive a substantial financial benefit, including distributions from the corporation as its sole owner, regardless of whether he continues to manually work at the project sites.  Moreover, if Husband divests himself of his ownership in IPR, he will receive payment for his ownership interest that will provide him with substantial income that he can subsequently reinvest in other income producing assets or use for his benefit.  Under these circumstances, we agree that Wife should not be under an absolute obligation to obtain employment after eighteen months in order to meet her financial needs. *See Lewis*, 1987-NMCA-073, ¶¶ 51-52 (remanding because of insufficient findings after this Court held that a sixty-two-year-old wife who had been married to her husband for nearly forty years, whose marital role was primarily that of a homemaker, and whose spouse is well able to afford alimony, has no obligation to "rehabilitate" herself).

{23}     The district court reasonably recognized that "[b]oth parties are of retirement age and need to transition to retirement."  However, automatic termination of Wife's spousal support after eighteen months could only be justified in this case if, after eighteen months, Wife's income was sufficient to establish that spousal support would no longer be necessary to help support her reasonable needs.  The district court made no findings to that effect, and the facts do not support such a finding or such an inference.  Specifically, the court made no findings regarding Wife's future employability or potential income.  Based upon the lack of any evidence or findings on this issue, we remand this issue for further consideration by the district court regarding the duration of the spousal support to Wife.  While we do not reverse the district court's imposition of a $6,500 per month standard of living for Wife, this level was originally set as a rehabilitative amount without considering all the IPR income received by Husband and based upon a presumption that both parties would be making a transition to retirement. *See Lewis*, 1987-NMCA-073, ¶ 52.  The district court must reconsider the overall income and expense level of both parties and make a new decision that is fair and equitable to each of them. *See id.*; *see also Lovato*, 1982-NMSC-052, ¶ 8.  We conclude that

9

spousal support was payable to Wife for the original eighteen-month interim period but must now be continued and re-evaluated based upon her current financial needs. *See Rabie*, 1993-NMCA-096, ¶ 10. As a result, the district court also abused its discretion when it strictly limited the duration of spousal support to eighteen months.

**Husband's Separate Property Income**

**{24}** We now address Wife's allegation that the district court erred in characterizing a portion of Husband's income from IPR as his separate property. We review the district court's equitable distribution of assets and liabilities for an abuse of discretion. *Arnold v. Arnold*, 2003-NMCA-114, ¶ 6, 134 N.M. 381, 77 P.3d 285. The district court here found that IPR was Husband's separate property and that Husband earned both a monthly community property salary of $8,333 per month and a separate income based on his ownership interest in IPR. Thus, the issue raised by Wife on appeal involves only an evidentiary challenge to the district court's rulings, and we shall apply a substantial evidence standard of review. *See Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 25, 146 N.M. 473, 212 P.3d 361 (applying a substantial evidence standard where no legal questions remain); *see also Corley v. Corley*, 1979-NMSC-040, ¶ 6, 92 N.M. 716, 594 P.2d 1172; *Zemke v. Zemke*, 1993-NMCA-067, ¶ 14, 116 N.M. 114, 860 P.2d 756. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283.

**{25}** On appeal, it was Wife's duty to present the evidence in the light most favorable to support the district court's findings, and then demonstrate why the evidence failed to support these findings. *Jurado*, 1995-NMCA-014, ¶ 9. Wife has not provided any citation to the record or other arguments to rebut the district court's conclusions that Husband's ownership interest in IPR was his separate property and that a portion of his salary resulted from this separate ownership interest. In addition, Wife has not provided this Court with any other evidence or arguments as to why it was error for the district court to accept Mr. Johnson's testimony regarding the correct salary for a non-owner employee doing the same work as Husband. *See* Rule 12-213(A)(4) NMRA; *see also Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 28, 135 N.M. 607, 92 P.3d 53 (explaining that a party challenging a finding for lack of substantial evidence must refer to "all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the appellant's arguments").

**{26}** On appeal, Wife merely asserts that her version of this factual position was correct and that the district court should have adopted it. *See Lahr v. Lahr*, 1970-NMSC-165, ¶ 2, 82 N.M. 223, 478 P.2d 551 ("We presume the correctness of the judgment of the [district] court who had the advantage of evaluating the demeanor of the parties and of the witnesses."). In such a situation, it is well established that the district court was free to accept Husband's evidence and reject Wife's evidence. *Jay Walton Enters., Inc. v. Rio Grande Oil Co.*, 1987-NMCA-070, ¶ 26, 106 N.M. 55, 738 P.2d 927 ("Where evidence is

10

conflicting and the court adopts findings on a disputed issue, the fact that there may have been other evidence upon which the court could have adopted a different finding does not constitute error."). "[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. On appeal, Wife has failed to meet her burden in this regard. As a result, we conclude that substantial evidence supported the district court's determination that Husband's ownership interest in IPR was his sole and separate property and that his reasonable salary for the field work performed for IPR was $8,333 per month. Salary paid in excess of $8,333 per month must also be treated as separate property distributions to Husband even though they were originally reported as W-2 income. Both sources of Husband's income are appropriately included in the determination of spousal support.

**CONCLUSION**

**{27}** For the foregoing reasons, the district court's findings and determinations of spousal support to Wife are reversed in part and affirmed in part. We remand this matter to the district court for further proceedings consistent with this Opinion.

**{28}** **IT IS SO ORDERED.**

_____
                                        **TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *Clark v. Clark*, No. 31,547**

**APPEAL AND ERROR**
Remand
Standard of Review

**COMMERCIAL LAW**
Corporations

**CORPORATIONS**

11

Corporations, General

**DOMESTIC RELATIONS**
Alimony
Change in Circumstances
Spousal Support

**PROPERTY**
Community Property
Separate Property