This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40948**

**RICHARD ARGANT,**

      Petitioner-Appellant,

v.

**ERMELINDA ARGANT,**

      Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Jarod K. Hofacket, District Court Judge**

Cordell Law, LLP
Linda L. Ellison
Albuquerque, NM

for Appellant

Batley Family Law
Roberta S. Batley
L. Helen Bennett
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**BACA, Judge.**

**{1}** Petitioner Richard Argant (Husband) filed a petition for dissolution of marriage, and Respondent Ermelinda Argant (Wife) filed a counter-petition in which she requested spousal support and payment of her attorney fees. Subsequently, the parties filed a marital settlement agreement (MSA), resolving all issues except spousal support. Following a merits hearing on the issue of spousal support, the district court issued "The Court's Findings of Fact and Conclusions of Law and Judgment Regarding Spousal

Support" (the Judgment), in which the district court ordered Husband to pay spousal support in the amount of $7,500 per month until an equalization payment of $125,000 is made to Wife, and $4,000 per month thereafter until Wife reaches the age of sixty-five. Husband appeals. On appeal, Husband contends that the district court abused its discretion in both its award of spousal support and in the amount awarded. Because we are unable to discern the basis for the district court's determination of the amount of spousal support it awarded, we reverse and remand for further consideration. We deny Wife's request for attorney fees on appeal.

## DISCUSSION

### I. Spousal Support

**{2}** As to the issue of spousal support, Husband argues that because the district court erred in many of its findings of fact and conclusions of law, the district court abused its discretion in both the award of spousal support to Wife and the amount awarded.

### A. Standard of Review

**{3}** "Whether to order spousal support, how much to order, and the duration of the order are within the sound discretion of the district court." *Rabie v. Ogaki*, 1993-NMCA-096, ¶ 5, 116 N.M. 143, 860 P.2d 785. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Clark v. Clark*, 2014-NMCA-030, ¶ 8, 320 P.3d 991 (internal quotation marks and citation omitted). "Where the court's discretion is fact-based, we must look at the facts relied on by the district court as a basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence." *Id.* (alteration, internal quotation marks, and citation omitted). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Id.* ¶ 24 (internal quotation marks and citation omitted).

### B. We are Unable to Discern the Basis for the Amount of Spousal Support the District Court Awarded

**{4}** "In determining whether to order spousal support, the district court is to consider: (1) the needs of the proposed recipient[;] (2) the proposed recipient's age, health, and means of self[-]support; (3) the proposed payor's earning capacity and future earnings; (4) the duration of the marriage; and (5) the amount of property owned by the parties." *Rabie*, 1993-NMCA-096, ¶ 5; *see* NMSA 1978, § 40-4-7(E) (1997). In addition, the district court must consider "the reasonable needs of the respective spouses" and "the type and nature of the respective spouses' liabilities." Section 40-4-7(E)(4), (8).

**{5}** "The actual need of the proposed recipient is a focal consideration in determining whether to order spousal support." *Clark*, 2014-NMCA-030, ¶ 7. The need of the proposed recipient includes such considerations as the standard of living of the

respective spouses during the term of the marriage and the maintenance of medical insurance for the respective spouses. *See* § 40-4-7(E)(4).

**{6}** Before addressing the central issue in this appeal—the propriety of the district court's computation of Husband's earning capacity vis-à-vis the amount of spousal support to be awarded to Wife—we pause to point out that based on our review of the record, the arguments of the parties, and applicable law, we conclude that the district court did not err in its consideration and resolution of each of the other factors established by *Rabie*, 1993-NMCA-096, ¶ 5; *Clark*, 2014-NMCA-030, ¶ 7; and Section 40-4-7(E); that a district court must consider when tasked with deciding whether to award spousal support in a dissolution of marriage case. That said, we turn now to consider the central issue in this appeal.

**{7}** The central issue in this appeal boils down to whether the district court's determination of Husband's earning capacity and future earnings are supported by substantial evidence such that its award of spousal support to Wife was not an abuse of discretion. *See Rabie*, 1993-NMCA-096, ¶ 5; *Clark*, 2014-NMCA-030, ¶¶ 8, 24.

**{8}** In determining an award of spousal support, the district court is required by statute to quantify future earnings. *See* § 40-4-7(E)(2). We accept that, in the spousal support context, there is inherent uncertainty in this sort of projection, which is accommodated by the district court's continuing jurisdiction to modify a support award in some circumstances. *See* § 40-4-7(F) ("The court shall retain jurisdiction over proceedings involving periodic spousal support payments when the parties have been married for twenty years or more prior to the dissolution of the marriage."). Given the uncertainty of this projection, we allow that the findings of the court are not required to be supported with absolute certainty. Nevertheless, they must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brannock v. Brannock*, 1986-NMSC-042, ¶ 9, 104 N.M. 385, 722 P.2d 636 (internal quotation marks and citation omitted). With this in mind, we consider the findings the district court made in the Judgment.

**{9}** Concerning Husband's earning capacity and future earnings, the district court found: (1) "[Husband] submitted Exhibit 33 showing $857,731 of recent past-due insurance claims he had to write off because the insurance claims were untimely filed or the patient was not billed directly. . . . [Husband] testified this was due to mismanagement and negligence of the Dentistry Divine Smile office and billing practices"; and (2) "The effect of this is that his dental practice should have earned an additional $800,000 without . . . [Husband] doing any additional work as a dental provider. [Husband] testified he has put procedures in place to prevent these previous billing issues from recurring." Husband does not challenge the contents of Exhibit 33 or the facts established therein. Husband focuses on the conclusions about future income that the district court drew based on Exhibit 33 and the corrected billing practices.

**{10}** In that regard, Husband argues the district court erred by concluding, based on Exhibit 33, that "[Husband] has the ability to make over $800,000 more per year[,] which

would make his potential income nearly one million dollars per year because of the procedures he testified [he] put in place to timely file insurance claims at Dentistry Divine Smile." Specifically, Husband submits that "Exhibit 33 . . . simply does not purport to state that [his] business can earn $800,000 *per year* in additional revenue." We agree and explain.

**{11}** It is unclear how the district court calculated Husband's expected yearly income and his prospective capacity to pay the spousal support ordered in the Judgment. It is possible that the district court relied on the business evaluator's calculation that Husband's normalized officer compensation would be $215,000. However, it is equally possible that the district court relied on Exhibit 33 to determine that Husband could, in the future, earn an additional $800,000 per year in calculating the amount of spousal support that Husband could afford to pay. If the latter is true, we agree with Husband that Exhibit 33 does not provide substantial support for that conclusion. We explain.

**{12}** We believe it was logical for the district court to conclude that (1) "[Husband] himself presented the solution to his financial strain—correct his billing practices. Because [Husband] testified that he has already taken steps to do so, the significant liabilities and debt service are not an impediment to paying spousal support"; and (2) "[Husband] will not suffer a financial hardship upon payment of spousal support unless he continues to do over $800,000 in dental work for free. [Husband] easily should be able to maintain Dentistry Divine Smile, service his business and personal debt, and refinance two mortgages to remove [Wife]'s name from such properties."

**{13}** However, we agree with Husband's contention that the district court's finding that he had the ability to make an additional $800,000 per year is unsupported because the mismanagement occurred over many years. The district court's conclusion of law—that Husband has the ability to make over $800,000 more per year—suggests that the district court's support award assumed that Husband had available an additional $800,000 per year. This assumption is unsupported by Exhibit 33.

**{14}** Exhibit 33 shows only that as of January 21, 2022, Husband wrote off $857,731 in untimely filed insurance claims because it had been over ninety days since the service was provided. Exhibit 33 does not otherwise indicate within what period those claims accrued.

**{15}** We observe that as to the billing practices that lead to this loss of revenue, Husband testified that he has put new procedures in place to prevent such a loss from recurring. Thus, while Exhibit 33 and Husband's testimony clearly support that Husband is capable of making more money in the future given his corrected billing practices, they do not provide substantial support for the proposition that he can make $857,731 *within a one-year period*. If the court relied on Exhibit 33 to conclude that Husband's business can earn an additional $800,000 *per year* in future revenue in calculating how much Husband should pay in spousal support, then it relied on a fact not supported by substantial evidence. *See Clark*, 2014-NMCA-030, ¶¶ 8, 24 ("Where the court's discretion is fact-based, we must look at the facts relied on by the district court as a

basis for the exercise of its discretion, to determine if these facts are supported by substantial evidence. . . . Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." (alteration, internal quotation marks, and citation omitted)).

**{16}** Our conclusion is further supported by the district court's statement in footnote 5 of the Judgment, where the district court appears to be concerned with the period of time within which this $800,000 was earned. There, the district court stated:

> The [c]ourt must accept . . . Exhibit [33] as offered by [Husband]. The [c]ourt asked clarifying questions to [Husband] when he was on the stand. It is entirely possible that the $857,000 represents uncollectable amounts *for greater than one year*. On the other hand, as of January 21, 2022, the past due amount over [ninety] days was $857,731. As of March 18, 2022, that amount was $586,750. It appears from the exhibit that $270,981 of these claims were paid during that sixty (60) days. The bottom two rows were not explained. They could be unpaid claims from each of the years listed, or paid claims. [Husband] presented the exhibit to represent current past due amounts, and testified that it represented that $857,000 was unpaid and uncollectable current claims and the [c]ourt will accept it in that manner.

From this, it appears the district court considered a view that the exhibit represented outstanding payments from more than one year but based on Husband's testimony and explanations, viewed it to show "unpaid and uncollectable current claims" when some amounts had been recently collected.[1] Nevertheless, the fact remains that neither Exhibit 33 nor the testimony of Husband explain the period of time within which this income was billed or earned. The most that can be said of them is that they represent "current" unpaid and uncollected claims. Even then, we have no way of knowing what "current" means in terms of when the claims accrued. A review of Exhibit 33 is of no help in determining what is meant by "current" because although it lists $30,459 of claims in a column entitled, "Current" and lists $857,731 in claims in a column entitled ">90" it does not state how far beyond ninety days the claims in that column are. Neither Exhibit 33 nor any other testimony illuminate the age of those claims. Therefore, there is no basis upon which the district court could have determined, based on Exhibit 33, what Husband's prospective *yearly* income would be.

**{17}** While we appreciate the effort of the district court to set forth the basis for the spousal support award in its thirty-four-page Judgment, we cannot discern how the

---

1We acknowledge that an argument could be made that Exhibit 33 provides some support for the district court's conclusion that Husband is capable of earning an additional $800,000 per year based on the $270,981 that was collected between January 1, 2022 and March 18, 2022. However, we conclude that there is nothing in the record that indicates the district court relied on the collection of this money in this period of time to find that Husband was capable of earning an additional $800,000 per year. As well, neither the district court nor Wife appear to be relying on this figure as support for the court's finding that Husband could make an additional $800,000 per year. Accordingly, we do not consider this in our analysis of this issue.

district court calculated Husband's prospective yearly income. If the district court relied upon Exhibit 33, we cannot conclude that the district court's finding that Husband was capable of earning an additional $800,000 per year is supported by substantial evidence. Because the basis for the district court's award of spousal support is unclear, we must reverse and remand for further consideration by the district court, with instructions that it enter findings that establish the basis for the amount of spousal support that it awards. *See Rabie*, 1993-NMCA-096, ¶¶ 15, 17 (stating that "[t]he district court's findings and conclusions [did] not indicate why it denied [spousal] support for the ten-month period beginning a month after the termination of the originally ordered support," and remanding for reconsideration with instructions that the court "enter findings that establish the basis for the denial"); *see also Lewis v. Lewis*, 1987-NMCA-073, ¶¶ 47-48, 52, 106 N.M. 105, 739 P.2d 974 (stating that it was unclear whether the district court considered "other sources of income, potential or actual" in calculating the wife's needs, and that the court "must make sufficient findings concerning [the] wife's ability to support herself from this potential income, so that we are able to determine the basis for the denial of alimony. . . . Because of the lack of necessary findings on this issue, we must remand for further consideration of this point.").

## II.    Attorney Fees

**{18}**    Wife requests an award of attorney fees on appeal. "New Mexico law permits the award of attorney fees on appeal in domestic relation cases." *Rhinehart v. Nowlin*, 1990-NMCA-136, ¶ 49, 111 N.M. 319, 805 P.2d 88; § 40-4-7(A) ("In any proceeding for the dissolution of marriage, division of property, . . . or spousal support, the court may . . . make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of [their] case."); *see also* Rule 12-403(A) NMRA ("[T]he appellate court may, in its discretion, award [attorney fees] to the prevailing party on request.").

**{19}**    Husband, in response, argues that "[t]he parties agreed in their [MSA] that each would pay their own attorney[] fees." We note that in the MSA, both parties assumed as their "sole and separate debt," agreeing to hold the other "harmless" of their "attorney[] fees and costs incurred herein." Thus, it appears clear to us from this language in the MSA that the parties intended for each party to be individually responsible for the attorney fees each party incurred in this litigation. To the extent that Wife would have us interpret this language otherwise in support of her request for attorney fees on appeal, we decline to do so given the clarity of the language of the MSA. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 ("The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." (alteration, internal quotation marks, and citation omitted)). Even assuming, for purposes of this opinion, that we agree with Wife's apparent contention that the language of the MSA does not apply to an award of attorney fees on appeal, we exercise our discretion to deny Wife's request for attorney fees.

## CONCLUSION

**{20}** For the reasons stated above, we reverse the district court's spousal support award and deny Wife's request for attorney fees on appeal.

**{21}** **IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**